KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*

Hearing Date: May 20, 2019
10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| WASTE SERVICES, INC.[1], | Case No. 19-22260 (RDD) |
| Debtor. | |

## DEBTOR'S MOTION PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006, FOR AN ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Waste Services, Inc. (the "Debtor" or "Seller"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves this Court (the "Sale Motion"), pursuant to sections 363 and 365 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the entry of an order approving the Sale (defined below) of the Debtor's interests in certain Assets (defined below) free and clear of all Liens, Claims, and Encumbrances (defined below). In further support of this Sale Motion, the Debtor refers the Court

---

[1] The Debtor's principal office is located at 444 E. Boston Post Road, Suite 210, Mamaroneck, New York 10543. The last four digits of its taxpayer identification number are 1432.

and interested parties to the Affidavit in Support of Debtor's Motion, Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, for an Order Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, signed on April 29, 2019 (the "Spiezio Affidavit"), annexed hereto as Exhibit "A", and further respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor seeks authority to sell the Assets to Oak Ridge Waste and Recycling of CT, LLC ("Oak" or "Buyer"), by way of a private sale for a purchase price in the amount of $7,487,500 (the "Sale"). Prior to and following the Petition Date (defined below), the Debtor and Buyer have been in the process of negotiating the Sale of the Assets. These negotiations have culminated in the asset purchase agreement (the "APA" or "Agreement") that is the subject of this Sale Motion. A true and complete copy of the Agreement is annexed hereto as Exhibit "B". The Assets, as defined in Section 2.1 of the Agreement and listed on Schedule 2.1 to the Agreement (the "Assets"), are related to or used or are useful in the Debtor's roll-off waste hauling business and its commercial compactor business.

Specifically, the Assets relate to: (i) the Seller's roll-off waste hauling and recycling business in the territory described on Schedule A of the Agreement (the "Northern Westchester Roll-Off Business"); (ii) the Seller's roll-off waste hauling and recycling business in the territory described on Schedule B of the Agreement (the "Southern Westchester Roll-Off Business"); (iii) the Sellers's commercial and compactor waste hauling and recycling business in the territory described on Schedule C of the Agreement (the "Northern Westchester Commercial and Compactor Business"); and (iv) the Seller's commercial and compactor waste hauling and recycling business in the territory described on Schedule D of the Agreement (the "Southern

2

Westchester Commercial and Compactor Business" and, together with the Northern Westchester Roll-Off Business, the Southern Westchester Roll-Off Business, and the Northern Westchester Commercial and Compactor Business, the "Business").

The Debtor believes the Sale of the Assets, which allows for payment in full to all unsecured creditors, is in the best interests of the Debtor's estate and its creditors and is an exercise of sound business judgment. For the reasons described below, the Debtor seeks an order approving the private sale of the Assets to the Buyer for $7,487,500. Accordingly, the Debtor seeks an order in substantially the form annexed hereto as Exhibit "C" (the "Sale Order") approving the Sale of the Debtor's interest in the Assets free and clear of all Liens, Claims, and Encumbrances, as defined in Article I and section 2.1 of the Agreement (the "Encumbrances").

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Sale Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicate for the relief requested in based upon sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and General Order M-383.

## CASE BACKGROUND

3. On February 13, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case in the United States Bankruptcy Court for the Southern District of New York (the "Court").

4. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. As of the date of this Sale Motion, the United States Trustee has not yet appointed an official creditors' committee in the Chapter 11 Case. No trustee or examiner has been appointed in the Chapter 11 Case.

6. A detailed description of the Debtor's business and the facts precipitating the filing of the Chapter 11 Case are set forth in the Declaration of Joseph Spiezio, III Pursuant to Local Bankruptcy Rules 1007-2 and 9007-1 (the "First Day Declaration") [Docket No. 4].

7. On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities and Schedules of Executory Contracts and Unexpired Leases [Docket No. 2] (collectively, the "Schedules").

## THE PROPOSED SALE

A. The Asset Purchase Agreement

8. On April 29, 2019, the Debtor and Buyer executed the Agreement. The following is a summary of the material terms of the Agreement.[2]

- Purchase Price. $7,487,500, minus the Gross Revenue Adjustment (defined below), if any. On the date of the Closing, the Buyer will pay the Debtor the sum of $5,837,500 (the "Initial Purchase Price Installment") which shall be paid in cash by wire transfer in immediately available funds to an account designated by the Debtor.

- Gross Revenue Adjustment. At Closing, the Buyer will deposit $1,650,000 (the "Escrow Amount") by wire transfer or other delivery of immediately available funds with the escrow agent (as defined in the Agreement). The Escrow Amount will be held subject to the Gross Revenue Adjustment mechanisms as described in Section 3.2 of the Agreement (the "Gross Revenue Adjustment"), and such Escrow Amount will be released to the Debtor consistent with the terms in Section 3.5 of the Agreement.

- Deposit: None.

---

[2] The summary of the Agreement is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between the summary in this Motion and the terms of the Agreement, the terms of the Agreement shall govern.

- Assets. The Assets to be transferred are those that are related to or used or useful in the Debtor's Business as listed on Schedule 2.1 of the Agreement.

- Free and Clear. The Buyer will receive the Assets free and clear of all Encumbrances, other than the Assumed Liabilities (defined below).

- Closing. The closing of the Agreement (the "Closing") shall take place within 14 days after the Sale Order is entered provided the closing conditions of Article VIII of the Agreement are otherwise satisfied.

- Closing Conditions. Closing of the Sale is subject to the conditions described in Article VIII of the Agreement, including but not limited to: (i) Bankruptcy Court approval (section 8.3); (ii) Buyer's completion of due diligence (section 8.1(h)); (iii) Buyer's acquisition of financing (section 8.1(i)); and (iv) approval by Buyer's board of directors (section 8.1(j)).

- Termination and indemnification. Effect of termination of the Agreement and indemnification of the Buyer or Debtor are governed by sections 8.5, 9.1, and 9.2 respectively.

B. Extraordinary Provisions of The Proposed Sale

9. The extraordinary provisions contained in the Sale Agreement are as follows:

- Private Sale. The Agreement and Sale Order contemplate a private sale of the Assets. As described more fully below, the Debtor submits that a private sale is appropriate under the circumstances.

- Waiver of Bankruptcy Rule 6004(h) Stay. The proposed form of Sale Order seeks a waiver of the 14-day stay imposed under Bankruptcy Rule 6004(h). The Debtor submits that an expeditious sale of the Assets is appropriate here.

**ASSUMPTION AND ASSIGNMENT OF
ASSIGNED CONTRACTS**

10. In connection with the Agreement, the Debtor seeks authority under section 365 of the Bankruptcy Code to (a) assume and assign certain contracts of the Debtor as further set forth in section 3.6 and Schedule 2.1 of the Agreement (the "Assigned Contracts"), and (b) execute and

deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the applicable Assigned Contracts.

## ARGUMENT

**A. Approval of the Sale of the Assets is Appropriate and in the Best Interests of the Debtor's Estate and Creditors**

11. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the debtor's estate. Specifically, that section provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b).

12. The sale or use of property of the estate outside the ordinary course of business should be approved by the Court if it can be demonstrated that a sound business justification for the proposed transaction exists. *See In re Chrysler LLC*, 576 F.3d 108, 117-18 (2d Cir. 2009), *citing In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("In this Circuit, the sale of an asset of the estate under § 363(b) is permissible if the 'judge determining [the] § 363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application.'" (*citing Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 772 F.2d 1063, 1071 (2d Cir. 1983); *In re Gen. Motors Corp.*, 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009).

13. In addition, Bankruptcy Code section 105(a) grants the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." *In re Flores*, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003) (quoting 2 COLLIER ON BANKRUPTCY, ¶ 105 at 105-5, 15th ed. rev. rel. 2000)).

14. The Debtor submits that the Purchase Price is fair and reasonable and satisfies the business judgment rule in light of the fact that the Purchase Price will be sufficient to pay in full all unsecured creditors, which fact also supports the Debtor's business judgment to proceed notwithstanding the fact that the Buyer has not provided a deposit.

15. As such, the Debtor submits that the Sale of the Assets offers the greatest benefit to the Debtor's estate, and is a sound exercise of business judgment.

**B. The Assets Should be Sold Free and Clear of Encumbrances**

16. Other than the liabilities being assumed by the Buyer, as defined in section 3.6 of the Agreement (the "Assumed Liabilities"), the Debtor seeks approval of the sale of the Assets to the Buyer free and clear of all Encumbrances.

17. Property may be sold outside the ordinary course of business under section 363(b) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances under Bankruptcy Code section 363(f), only if:

> 1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> 2) such entity consents;
>
> 3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> 4) such interest is in bona fide dispute; or
>
> 5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

18. Accordingly, a debtor may sell property of a bankruptcy estate outside the ordinary course of business if one of the five conditions under Bankruptcy Code § 363(f) is satisfied. *See In re Grubb & Ellis Co.*, Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr.

S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); *In re Borders Group, Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)).

19. Here, the proposed purchase price exceeds any Encumbrances against the Assets, and the Debtor intends to satisfy any secured claims against the Assets as soon as practicable after the Closing. To the extent there are any other Encumbrances, the Debtor seeks to sell the Assets free and clear of such Encumbrances, which such Encumbrances to attach to the proceeds of the Sale in order of their priority. The Debtor will provide all potential holders of Encumbrances with notice of this Sale Motion ("Sale Motion Notice"), and they will have an opportunity to object to the relief requested in this Sale Motion. Any entity that does not object to the Motion shall be deemed to have consented. *See, e.g., Futuresource LLC v. Reuters, Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale of assets counts as consent); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (citing *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985)); see also *In re Enron Corp.*, 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). Therefore, if a party holding an Encumbrance on the Assets who received Sale Motion Notice fails to object to the Sale Motion, the Debtor's sale of the Assets free and clear of all Encumbrances satisfies section 363(f)(2) of the Bankruptcy Code.

20. Further, the Debtor submits that section 363(f)(5) is satisfied by the Agreement, as (i) any entity holding an Encumbrance on the Assets could be compelled to accept a monetary satisfaction of its Encumbrance, and (ii) the Debtor proposes that any Encumbrances on the Assets shall attach to the net proceeds of the Sale of the Assets, subject to any claims and defenses the

Debtor may possess with respect thereto, in the priority they had before the Sale (except as otherwise set forth herein). Additionally, as this Court has recognized, section 363(f)(5) does not require that such holders of Encumbrances receive full payment of their underlying debt. *See e.g., In re Boston Generating, LLC*, 440 B.R. 330, 332 (Bankr. S.D.N.Y. 2010). As such, the sale of the Assets free and clear of all Encumbrances satisfies section 363(f)(5) of the Bankruptcy Code.

**C. The Buyer Should be Afforded all Protections Under Section 363(m) as a Good Faith Purchaser**

21. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) was later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an [authorization] under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m). *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) … provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal[.]"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal[.]").

22. The Second Circuit has indicated that a party would have to show fraud or collusion between a buyer and the debtor in possession or trustee in order to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC, v. Colony Hill Assocs. (In re Colony Hill Assocs.*), 111 F.3d 269, 276, (2d Cir. 1997) ("Typically, the misconduct that would destroy a [purchaser's] good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders

9

or the trustee, or an attempt to take grossly unfair advantage of other bidders[.]"); *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239 (MBM), 97 Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. 1997); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

23. Here, the Buyer and the Debtor have satisfied the requirements of Section 363(m). The Agreement is the result of extended arm's-length, good-faith negotiations between the Debtor and the Buyer, each represented by their respective counsel. The Debtor submits that the Buyer is a "good-faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and should be entitled to its protection. Accordingly, the Debtor requests that the Court make a finding that the Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code.

**D. A Private Sale is Appropriate**

24. The Debtor is seeking to transfer the Debtor's interest in the Assets in a private sale without the need to conduct an auction process. Although sales of assets outside the ordinary course of business are normally conducted pursuant to competitive bidding procedures and public auctions, section 363 of the Bankruptcy Code does not ordinarily require these procedures. Indeed, Bankruptcy Rule 6004(f), which provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction," specifically authorizes private sales. Fed. R. Bankr. P. 6004(f)(1).

25. Courts have approved private sales of assets upon the satisfaction of the general standards for approval under section 363(b) of the Bankruptcy Code. *See, e.g., In re Saint Vincents Catholic Med. Ctrs.*, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. May 27, 2010) (Docket No. 389) (approving private sale of a cancer center pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code); *In re Old Carco, LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. 2009) (Docket No. 5937) (approving the sale of the debtors' former Newark, Delaware assembly

plant by private sale as satisfying the requirements of section 363 of the Bankruptcy Code); *In re Wellman Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. 2009) (Docket No. 507) (approving sale of one of the debtor's facilities by a private sale that was not subject to higher and better offers); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. 2005) (Docket No. 1355) (authorizing sale of certain aircraft by private sale, stating that "no auction was necessary with respect to sale of the [a]ircraft").

26. It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion … to conduct public or private sales of estate property.") (internal quotations and citation omitted); *In re Dewey & LeBeouf*, Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection because the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale ... and there is no requirement that the sale be by public auction.").

27. The Debtor respectfully submits that a private sale of the Debtor's interest in the Assets without holding an auction is appropriate for two reasons. First, as discussed above, it is anticipated that the proposed purchase price will provide sufficient proceeds to pay all unsecured creditors in full. Second, sufficient notice of the Sale will be provided through the Sale Motion Notice, thereby affording the opportunity for any interested party to propose an alternative

transaction to acquire the Assets. Should an alternative transaction be proposed, the Debtor will diligently consider the same. Accordingly, the Debtor respectfully requests that this Court approve the private sale upon the terms of the Agreement.

**E. Assumption and Assignment of Assigned Contracts**

28. Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the Debtors." 11 U.S.C. § 365(a). A debtor's decision to assume an executory contract or unexpired lease must be an exercise of its sound business judgment for the court to approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

29. Further, section 365(k) of the Bankruptcy Code provides that assignment by a debtor to a third-party assignee of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Therefore, upon the closing of the Agreement, the Debtor will be relieved of its obligations under the Assigned Contracts, thereby further decreasing the obligations of the estate and creating value for creditors.

30. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under executory contracts that will be assumed must be cured or that adequate assurance be provided to the counterparties that such defaults will be promptly cured.

**F. Waiver of Stay**

31. Under Bankruptcy Rule 6004(h), orders authorizing the sale of a debtor's assets under section 363(b) of the Bankruptcy Code are "stayed until the expiration of 14 days after entry of the order" authorizing such sale. FED. R. BANKR. P. 6004(h).

32. A waiver of the stay requirement under Bankruptcy Rule 6004(h) will relieve the Debtor's estate of any financial burdens associated with the Assets and reduce the expenditure of additional funds to maintain the Assets. Additionally, such a stay could further delay the date that the Buyer can take possession and control of the Assets and thus could chill the Sale, especially in light of the fact that these negotiations have been ongoing between the Debtor and Buyer since pre-petition and one potential sale has already fallen through due to third-party interference. Conversely, the waiver of the stay will allow for a smoother transition for the Buyer and unburden the Debtor and the estate from any obligations arising from the Assets.

33. For these reasons, the Debtor respectfully requests that the Court waive the requirement under Bankruptcy Rule 6004(h).

## NOTICE

34. Bankruptcy Rule 6004(c) requires that a motion pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interests in the property to be sold." Fed. R. Bankr. P. 6004(c).

35. In accordance with Bankruptcy Rule 6004(a), a copy of the Notice of the Sale Motion will be provided by first-class mail to (i) the United States Trustee; (ii) all of the Debtor's unsecured creditors; and (iii) any applicable taxing authorities. In accordance with Bankruptcy Rule 6004(c), a copy of the Notice and Sale Motion will be provided by first-class mail to (i) all

the parties who have liens or other interests in the Assets; and (ii) all parties having filed a notice of appearance and request for service of papers in the Debtor's case.

36. The Debtor respectfully submits that such notice is sufficient and that no additional or further notice is required.

**NO PRIOR REQUEST**

37. No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially in the form annexed hereto as Exhibit "C" granting the relief requested herein, and such other and further relief as may be just and proper.

Dated: New York, New York
       April 29, 2019

                                      KLESTADT WINTERS JURELLER
                                      SOUTHARD & STEVENS, LLP

By: */s/ Tracy L. Klestadtt*
     Tracy L. Klestadt
     Joseph C. Corneau
     200 West 41st Street, 17th Floor
     New York, New York 10036-7203
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: tklestadt@klestadt.com
              jcorneau@klestadt.com

*Attorneys for Debtor and Debtor-in-Possession*